**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Bruce A. MULDER,**
**Defendant-Appellant.**

**No. 86–1059.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 30, 1986.

Decided Jan. 26, 1987.

Ruffin & Rotwein, Roger S. Ruffin, San Francisco, Cal., for defendant-appellant.

United States Atty's Office, Michael J. Yamaguchi, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before ANDERSON, TANG and FARRIS, Circuit Judges.

TANG, Circuit Judge:

Mulder appeals his conviction of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) (1982). He entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress evidence obtained during a warrantless search. We reverse.

## BACKGROUND

On November 24, 1983 Mulder checked into the Emeryville Holiday Inn room 821, and secured payment of his bill with an American Express card. Hotel employees understood Mulder intended to stay one night and his registration card payment record indicated November 25 as his departure date. Consequently, on the evening of November 25, the clerk at the front desk assigned room 821 to new guests since it was listed as "Unoccupied—Ready for Sale." When the bellman and new guests opened the door they observed various personal items.

The bellman reported the condition of the room to the front desk clerk, who sent a hotel security officer to check the room. He observed a locked brown bag and a shirt in the room, then locked the door so the defendant could not return and remove his personal belongings without contacting the front desk and arranging payment.

The next morning, at 6:30 A.M. on November 26, a hotel security officer removed the items from room 821, broke the lock on the brown bag, and observed, among other items, ten clear plastic bags containing tablets inscribed with the lettering "LEMMON 7/14." The security officer contacted the police, and on November 27 a Drug Enforcement Administration Agent took custody of the brown bag and the tablets. Later on November 27 Mulder returned to the hotel, learned the whereabouts of his bag, called the police and arranged to pick up his bag on December 2. Meanwhile, the

plastic bags full of 10,033 tablets were tested at the Western Regional Laboratory through the use of mass spectrometry, infrared spectroscopy and gas chromatography. The tests revealed that the tablets were methaqualone.

Mulder moved to suppress the results of these warrantless tests and reserved his right to appeal the denial of his motion to suppress when he entered a conditional guilty plea. The Government argued the warrantless search was permissible either because it was a search of abandoned property or because it did not exceed the scope of a lawful private search. The district court found that Mulder had not abandoned his property by leaving it in the hotel room for 48 hours, but held that the Government agents did not exceed the scope of the private search.

### ANALYSIS

*A. Abandonment*

▮ We review the district court's factual finding that Mulder did not abandon his bag by leaving it in the hotel room under the clearly erroneous standard. *United States v. Mendia*, 731 F.2d 1412, 1414 (9th Cir.), *cert. denied*, 469 U.S. 1035, 105 S.Ct. 509, 83 L.Ed.2d 399 (1984). The court noted that Mulder returned to the hotel only 48 hours later than he originally intended to check out. It is also pertinent that the hotel billed Mulder's American Express card for an extra day. Furthermore, Mulder contacted the police department to inquire about his bag before the tests were conducted. The district court's finding that these facts do not indicate abandonment of property was not clearly erroneous.

*B. Chemical Tests*

▮ We review the district court's conclusion that the chemical testing did not exceed the scope of the private search *de novo* because it is a mixed question of fact and law requiring a determination "whether the rule of law as applied to the established facts is or is not violated." *United*

States v. Miller*, 769 F.2d 554, 556 (9th Cir.1985) (quoting *United States v. McConney*, 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)).

▮ It is undisputed that the private search which led to the discovery of the plastic bags full of tablets cannot be challenged on fourth amendment grounds. The police authorization of chemical tests of the tablets is evaluated to determine whether the test exceeded the scope of the private search. *Walter v. United States*, 447 U.S. 649, 657, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980).

The Supreme Court has stated that the operative inquiry in evaluating whether chemical tests of drugs exceed the scope of a private search limited to visual perception is whether such testing is a "search" because "it infringe[s] an expectation of privacy that society is prepared to consider reasonable[.]" *United States v. Jacobsen*, 466 U.S. 109, 122, 104 S.Ct. 1652, 1661, 80 L.Ed.2d 85 (1984). In *Jacobsen* the Court decided that a field test for cocaine conducted "on the spot," *id.* at 112, 104 S.Ct. at 1655, did not violate the fourth amendment because "[a] chemical test that merely discloses whether or not a particular substance is cocaine does not compromise any legitimate interest in privacy." *Id.* at 123, 104 S.Ct. at 1661.

We consider this rule determinative of the instant case. The facts here are sufficiently different from those in *Jacobsen* that we do not believe its "field test" exception to the warrant requirement can be extended to the case at bar. First of all, this case does not involve a field test, but a series of tests conducted in a toxicology laboratory several days after the tablets were seized. Secondly, the chemical testing in this case was not a field test which could merely disclose whether or not the substance was a particular substance, but was a series of tests designed to reveal the molecular structure of a substance and indicate precisely what it is. Because of the greater sophistication of these tests, they could have revealed an arguably private

fact. As the *Jacobsen* Court held, "governmental conduct that can reveal whether a substance is cocaine, *and no other arguably 'private' fact, compromises no legitimate privacy interest.*" *Id.* (emphasis added).

While the circumstances of the visual search and seizure of the bags of tablets did not infringe the fourth amendment, and undoubtedly provided probable cause to seek a warrant, these circumstances do not justify a further extension of the *Jacobsen* field test exception to the warrant requirement. Accordingly, the judgment of the district court is REVERSED and the cause is REMANDED for further proceedings.